UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK VANDERSLOOT, and THE FRANK L. VANDERSLOOT TRUST<br><br>Plaintiffs,<br><br>v.<br><br>BMW PROPERTIES, LLC, ROBERT BAXTER, and BLAIR WALKER,<br><br>Defendants. | Case No. 4:12-cv-00471-EJL<br><br>**MEMORANDUM ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a). Plaintiffs have responded to the Motion and the matter is ripe for the Court's review.  Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a failed investment venture between the parties. The Plaintiffs, Frank VanderSloot and the Frank L. VanderSloot Trust ("the Trust"), are both Idaho residents. (Dkt. 1-2.) The Defendants, BMW Properties, LLC ("BMW Properties"), Robert Baxter, and Blair Walker, are all residents of Utah. (Dkt.1-2.)

On or about 2002, Mr. Walker and Mr. Baxter became aware of an opportunity to purchase shares in a company known as SightSound Technology, Inc. ("SightSound"). In conjunction with that option, Mr. Baxter and Mr. Walker incorporated an entity entitled BMW Technology, Inc. ("BMW Technology") under the laws of Delaware. (Dkt. 9-1, 4).[1] BMW Technology was created to serve as an investment vehicle for the acquisition of shares in SightSound. (Dkt. 1-2.) Mr. Baxter and Mr. Walker then sought out additional investors in BMW Technology. (Dkt. 1-2.) Elizabeth Grayden, Mr. Baxter's secretary and Mr. VanderSloot's sister-in-law, informed Mr. VanderSloot about the potential to invest in BMW Technology. The Parties disagree as to whether Mr. Baxter or Mr. Walker directed Ms. Grayden to call Mr. VanderSloot, or whether she contacted him without their knowledge. (Dkt. 12 at 4-5, ¶¶ 6, 8) (Dkt., 9-1 at 5, ¶ 11.) Regardless, after Ms. Grayden made Mr. VanderSloot aware of the investment possibility, the parties had a telephone discussion regarding the business proposition.

---

[1]

BMW Properties owns 37.5% of BMW Technology's outstanding shares. (Dkt. 9-1, 4.) BMW Technology is comprised of three shareholders: Plaintiffs (owning 50% of Technology's outstanding shares); BMW (owning 37.5% of Technology's outstanding shares); and Nevada-California Mines (owning 12.4% of Technology's outstanding shares). (Dkt. 9-1, 4.)

**MEMORANDUM ORDER - Page 2**

After that phone conversation, Mr. VanderSloot traveled to Salt Lake City, Utah on August 13, 2002 to meet with Mr. Baxter and further discuss the business opportunity ("Utah Meeting"). (Dkt. 9-1 at 5) (Dkt. 12 at 5.) Although no formal written agreement was finalized at the Utah Meeting, the parties appear to have agreed to enter into some kind of business relationship with Mr. VanderSloot agreeing to invest a substantial sum of money in BMW Technology in exchange for a number of shares. (Dkt. 1-2.) Following the Utah Meeting, the parties worked remotely, each in their home states, to develop the Stockholders' Agreement governing the terms of their relationship. This involved the exchanging of emails, phone calls, faxes, and other documents between Utah and Idaho as well as requests for funds to be wired to Defendants in Utah from the Plaintiffs' Idaho accounts.

Eventually, the parties' relationship deteriorated. As a result, on June 27, 2012, BMW Properties filed a lawsuit in Utah state court against Mr. VanderSloot and the Trust ("Utah Litigation"). (Dkt. 9-1 at 6) (Dkt. 12-1 at 11.) Six weeks later, Plaintiffs filed this lawsuit against the Defendants in Idaho state court alleging claims for: 1) Common Law Fraud; 2) Breach of Fiduciary Duty; 3) Civil Conspiracy; 4) Aiding and Abetting; 5) Negligent Misrepresentation; 6) Misappropriation of Corporate Opportunity; and 7) Unjust Enrichment/Constructive Trust. (Dkt. 1-2.) The Defendants have since removed the case to federal court. (Dkt. 1.)

Defendants then filed the instant Motion to Dismiss arguing personal jurisdiction over them is not proper in Idaho because the actions giving rise to all of the claims in this case occurred at the Utah Meeting. (Dkt. 9.) Plaintiffs, on the other hand, argue the

**MEMORANDUM ORDER - Page 3**

personal jurisdiction is appropriate here because there were numerous contacts between the parties, both before and after the Utah Meeting, via email and telephone with the Plaintiffs and/or their representatives who were located in Idaho. The Court has considered the parties' arguments and finds as follows.

## DISCUSSION

**1.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

In a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving jurisdiction is appropriate. *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008). The plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990). The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor. *Dole Food, Inc. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). Where a motion to dismiss is based on written materials rather than an evidentiary hearing, Plaintiffs need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

Where there is no applicable federal statute governing personal jurisdiction, as in this case, the law of the state in which the district court sits applies. *Boschetto,* 539 F.3d at 1015. The Idaho Supreme Court has determined that Idaho's long-arm statute (Idaho Code § 5-514) allows a broader application of personal jurisdiction than permitted under the Due Process Clause of the United States Constitution. *See Smalley v. Kaiser,* 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington,* 852 P.2d 491 (Idaho 1993).

**MEMORANDUM ORDER - Page 4**

**A.**      Types of Personal Jurisdiction: General and Specific

There are two types of personal jurisdiction—general and specific. *Lake v. Lake,* *817 F.2d 1416, 1420 (9th Cir. 1987)*. General jurisdiction is exercised by a state when personal jurisdiction is asserted over a "defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* *466 U.S. 408, 416 n. 9 (1984)*. This occurs when the defendant has "substantial" or "continuous and systematic" contacts with the state to the extent that these contacts approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* *223 F.3d 1082 (9th Cir. 2000)*. Here, the Plaintiffs do not seek to invoke general jurisdiction in this case, but rather argue this Court can exercise specific jurisdiction over the Defendants.

**B.**      Requirements for Specific Jurisdiction

Specific jurisdiction is exercised by a state when it asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state. *Helicopteros*, *466 U.S. at 414 n. 8.* Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *Lake,* *817 F.2d at 1421.*  The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates to* the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Id.* (emphasis added). *See also Ballard v. Savage,* 65 F.3d 1495 (9th Cir. 1995). The Ninth Circuit has also noted that these "contacts" requirements can be lessened if considerations of reasonableness so demand. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir. 1986). The plaintiff has the burden of satisfying the first two factors. *Lake,* 817 F.2d at 1421. The burden then shifts to the defendant to demonstrate unreasonableness. *Boschetto,* 539 F.3d at 1016.

### 1.    Purposeful Availment/Direction Requirement

The first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or on account of the unilateral activity of third parties. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in Ninth Circuit case law. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). A purposeful availment analysis is more often used in suits involving contracts, whereas a purposeful direction analysis is used in suits involving torts. *Id.* This case contains tort claims so this Court will go through a purposeful direction analysis.

Purposeful direction requires a finding that the defendant's actions outside the forum state are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. *Schwarzenegger,* 374 F.3d at 803. In *Dole Food Co, Inc.* the Ninth Circuit applied the "effects" test for intentional torts. *Id.,* 303 F.3d at 1111. This test requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly

aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*.

Defendants assert that they have not purposefully availed or directed their activities towards Idaho because the claims raised here would not exist but for Mr. VanderSloot's decision to come to Utah to meet with Mr. Baxter on August 13, 2002. (Dkt. 9 at 11-12) (Dkt. 16 at 1.) Plaintiffs counter that the Defendants have understated their contacts with Idaho occurring before and after the Utah Meeting. (Dkt. 12 at 1-2.) Defendants maintain that any other communications between the Parties while the Plaintiffs were in Idaho are inconsequential to the claims raised in the Complaint. (Dkt. 9-1.) The Court finds the contacts between the parties to be considered on this Motion are: 1) the first telephone communication between Mr. VanderSloot  and Mr. Baxter, 2) the Utah Meeting, and 3) the communications between the parties following the Utah Meeting.

### a.    First Contact

The parties first became aware of one another by virtue of Ms. Grayden's involvement. The Parties dispute which side reached out to the other first or, perhaps more accurately, whether Ms. Grayden acted at the direction of the Defendants in contacting Mr. VanderSloot. On this Motion, the Court resolves such conflict in Plaintiffs' favor. *See Dole Food, Inc., 303 F.3d at 1108* (The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.); *Ballard, 65 F.3d at 1498* (Where a motion to dismiss is based on written materials rather than an evidentiary hearing,

**MEMORANDUM ORDER - Page 7**

Plaintiffs need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss.). Here, the Plaintiffs allege the Defendants instructed Ms. Grayden to set up the initial telephone call to discuss the business proposition with Mr. VanderSloot. (Dkt. 1-2 at ¶ 21.) The parties then exchanged email and telephone communications to arrange the Utah Meeting. (Dkt. 1-2 at ¶ 22.) For the purposes of this Motion, the Court will assume these facts are true - that the Defendants initiated the first contact with Mr. VanderSloot in Idaho and exchanged communications to arrange the meeting.

### b.      Utah Meeting

The Court views the Utah Meeting to be an important event in regards to the personal jurisdiction question because it was the first face to face meeting setting up the relationship of the parties. The fact that this meeting occurred in Utah, in and of itself, would seem to go against finding the Defendants purposeful availed themselves of an Idaho forum. The Utah Meeting alone, however, does not tell the whole story of the contacts between the parties here. As noted above, the Defendants initiated contact with the Plaintiffs in Idaho in their first phone conversation during which, Plaintiffs allege, Mr. Baxter invited Mr. VanderSloot to come to Utah to meet and discuss potential investment in BMW Technology. Following the Utah Meeting, as discussed below, the Defendants had further contacts with the Plaintiffs in Idaho.

### c.      Communications Between the Parties After the Utah Meeting

The Utah Meeting was only the first face to face discussion between the Defendants and the Plaintiffs. Following that meeting, the Plaintiffs argue, the parties engaged in several communications in the form of emails, telephone calls, and faxes to

**MEMORANDUM ORDER - Page 8**

exchange business documents and request funds to be wired from Idaho accounts to the Defendants under the guise of being needed for BMW Technology's business operations. (Dkt. 12.) These communications and requests by the Defendants, as alleged by the Plaintiffs, were intentional acts that were directed at the Plaintiffs in Idaho and the Defendants knew these acts would cause harm to the Plaintiffs in Idaho. The Court finds the Defendants' communications with Plaintiffs in Idaho are sufficient to satisfy this prong of the analysis.

The Court finds the contacts in this case are analogous to those in *Superior Merch. Servs., LLC v. Bell*, 4:11-CV-00487-BLW, 2012 WL 256031 (D. Idaho Jan. 27, 2012), where "Plaintiffs skyped, received phone calls, email, faxes, and text messages in Idaho from Defendants in Utah." *Id.* at *4. Additionally, in that case, the Plaintiff's capital contributions to the Defendants "consisted of a series of wire transfers from Idaho to Utah." *Id.* Under those circumstances, that court found that the Plaintiff satisfied this first prong because Defendants directed numerous actions at Plaintiffs in Idaho. *Id.* So too here, Plaintiffs have also satisfied the purposeful availment prong by showing the Defendants purposefully directed several actions at the Plaintiffs in Idaho; not the least of which were requests for funds to be wired from Idaho.

> **2.**   Arises Out of/Relates to the Defendants' Forum-related Activities Requirement

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment or direction be the ones that give rise to the lawsuit. *Dole Food, Inc.*, 303 F.3d at 1088. The Ninth Circuit measures this in terms of "but for" causation,

that is, personal jurisdiction is proper only where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred. *Id.* This preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

This prong of the analysis is the crux of the Defendants' Motion. The Defendants' primary contention is that the Utah Meeting was the "but for" activity that gives rise to all of Plaintiffs' claims. (Dkt. 9 at 11-12) (Dkt. 16 at 1.) Plaintiffs disagree, focusing instead on the other contacts Defendants made before and after the Utah meeting. (Dkt. 12.) Defendants maintain that those other communications between the parties while the Plaintiffs were in Idaho are inconsequential to the actual claims raised in the Complaint. (Dkt. 9-1.)

In general, the Complaint alleges that Defendants used misrepresentations and wrongful conduct to induce Plaintiffs' investment in BMW Technology. (Dkt. 1-2.) The Complaint lists particular representations that Defendants allegedly made, which the Plaintiffs argue were false. (Dkt. 1-2 at ¶¶ 23, 92, 131.) Plaintiffs allege that Mr. VanderSloot relied upon these allegedly false representations in deciding to enter into the Stockholders' Agreement, thereby becoming a shareholder of BMW Technology, and wiring substantial funds to Defendants. (Dkt. 1-2 at ¶¶ 23–27, 92, 131.) Notably, the Complaint states that the misrepresentations included but were not limited to those particular ones that were listed therein. (Dkt. 1 at ¶¶ 23, 92, 131.) The Complaint goes on to state that the Defendants exchanged numerous emails, letters, and phone calls with Plaintiffs and their representatives in Idaho to make and arrange the allegedly fraudulent

**MEMORANDUM ORDER - Page 10**

representations and transactions. (Dkt. 1 at ¶¶ 26, 30, 33-39, 41, 44-45, 50-53.) Furthermore, the civil conspiracy claim includes allegations that the Defendants' conspired and agreed to continue concealing their misrepresentations and omissions from plaintiffs. (Dkt. 1 at ¶ 119.) Likewise, the aiding and abetting claim alleges that the Defendants received the funds from Plaintiffs and used those moneys to pay off separate loans, contrary to the representations the Defendants had made as to how the funds would be invested in BMW Technology. (Dkt. 1 at ¶ 124, 126.)

Having reviewed the claims raised in the Complaint in this case, the Court finds the claims in the Complaint are not limited to only those misrepresentations allegedly made at the Utah Meeting. Instead, the claims allege ongoing misrepresentations were made by the Defendants to the Plaintiffs which occurred both during and after the Utah Meeting when the Plaintiffs were back in Idaho. Thus, the Court finds that the claims in this case do arise out of the Defendants' contacts with Idaho by way of their alleged misrepresentations made to Plaintiffs who were in Idaho.

Again, for purposes of this Motion, the Court finds that the Defendants initiated the first contact between the parties by instructing Ms. Grayden to set up the first telephone call. But for the Defendants directing the initial call, Mr. VanderSloot would not have travelled to Utah for the meeting where, Plaintiffs allege, various misrepresentations were made prompting Plaintiffs to invest in BMW Technology. Furthermore, after the Utah meeting, the Defendants made other misrepresentations to Plaintiffs in Idaho including requests for funds to be wired from Idaho. The misrepresentations both at the Utah Meeting and in later communications give rise to the

**MEMORANDUM ORDER - Page 11**

claims alleged in the Complaint. (Dkt. 1.) Based on the foregoing, the Court finds that a sufficient nexus exists between the Plaintiffs' causes of action and the Defendants' activities in Idaho. As such, the Plaintiffs satisfied this prong.

    **3.**    Reasonableness Requirement

The third and final requirement is that the exercise of personal jurisdiction be reasonable and comport with the notions of fair play and substantial justice. *Bancroft,* 223 F.3d at 1088. The burden is on the defendant to demonstrate unreasonableness. *Id.* The reasonableness determination requires a court to look at seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.*; *see also Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). This prong of the analysis requires the defendant to make a "compelling case" to show that the exercise of jurisdiction in the forum would be unfair or unreasonable. *Lake,* 817 F.2d at 1422 *(citing Burger King,* 471 U.S. at 477–78).

Here, the Defendants argue that exercising personal jurisdiction is unreasonable and violates the Due Process Clause because 1) they did not purposefully interject themselves into Idaho; 2) litigation in Idaho would be greatly burdensome; 3) Utah has a greater interest in adjudicating the matter; and 4) Utah is an alternative forum and it would better serve judicial efficiency to have this litigation handled in Utah. (Dkt. 9-1 at

**MEMORANDUM ORDER - Page 12**

13-16.)

As discussed above, Defendants did purposefully interject themselves in Idaho by initiating the first telephone call with Mr. VanderSloot, by sending he and his representatives documents, and requesting funds be wired to them from Idaho. The extent of these interjections into Idaho by the Defendants were significant given they allegedly enticed the Plaintiffs to wire substantial funds to Utah. Further, the Court finds the Defendants will not be greatly burdened by litigating this case in Idaho. It appears BMW Technology's books and records have been transferred to and are located in Idaho. (Dkt. 12 at 15.) Furthermore, the Defendants have only identified one potential Utah witness, Marsha Park, who might be deposed and/or called to testify at trial in Idaho, whereas Plaintiffs have identified four witnesses who reside in Idaho and who might be involved in depositions or called to testify at trial. (Dkt. 9-1 at 4) (Dkt. 12 at 15.)[2] Any burden on the Defendants residing in Utah to litigate this matter in Idaho is minimal and does not deprive them of due process.

The parties dispute whether Idaho or Utah law applies. According to the Plaintiffs, they are not making claims under the Stockholders' Agreement, but rather under general tort claims. (Dkt. 12 at 15.) As such, the Plaintiffs argue that they are not bound by the Utah choice of law provision in Stockholders' Agreement. (Dkt. 12 at 15.) For the

---

[2]     Plaintiffs listed four potential third-party witnesses who all reside in Idaho and indicated that the relevant business records are already present in Idaho. (Dkt. 12 at 15.) The Idaho witnesses are Josh Tolman and Tyrie Barrott, who are identified in the Complaint, Ken Shephard, who attended the Utah Meeting, and Mike Batt, Mr. VanderSloot's accountant who was present at the November 2010 meeting referenced at Paragraphs 77-83 of the Complaint and who worked with Mr. Baxter's accountant to compile Technology's records after it was disclosed that Defendants had comingled the funds of Technology. (Dkt. 12 at 7.)

purposes of this Motion, the Court accepts the Plaintiffs' allegations. *See Dole Food, Inc., 303 F.3d at 1108* (The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.). If these are indeed general tort claims made by an Idaho citizen, Idaho has an interest in ensuring its citizens are not victims of misrepresentations by out-of-state Defendants. Even if Utah law were found to apply, the Court does not find such a circumstance would deem litigating the case in Idaho to be unreasonable nor would it give Utah a greater interest in adjudicating this case.

As to the factors concerning judicial economy and efficient resolution, the Court again finds litigating this case in Idaho is reasonable. Although discovery and other litigation matters might overlap with the Utah litigation previously filed by Defendants, such a situation does not make it unreasonable for this Court to exercise personal jurisdiction over the Defendants in this case. The claims in the Utah lawsuit have to do with the parties' respective rights and obligations under the Stockholders' Agreement. (Dkt. 12-1, Ex. B at 4.) The claims raised in this case, on the other hand, allege common law tort actions regarding the alleged misrepresentations made by the Defendants to induce the Plaintiffs to invest substantial sums of money in BMW Technology. Though relating to the same entity and parties, the claims raised are distinct. As such, any overlap appears to be slight. Further, as stated before, the records and many of the witnesses in this case appear to be located in Idaho making Idaho an effective and economical place in which to litigate this case. *See CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (In evaluating "the most efficient resolution" factor, the Ninth Circuit has

**MEMORANDUM ORDER - Page 14**

"looked primarily at where the witnesses and the evidence are likely to be located.").

In sum, the Court finds the Defendants have not made a "compelling case" showing that the exercise of jurisdiction in Idaho would be unfair or unreasonable. *See Lake,* 817 F.2d at 1422. As such, adjudication of the Plaintiffs' claims in Idaho does not offend the traditional notions of fair play and substantial justice. The Court finds it has personal jurisdiction over the Defendants.

## 2.   Transferring Venue Pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) accords a district court broad discretion with respect to transferring a case. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31 (1988).

The Court decides whether to exercise its discretion "according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Jones v. GNC Franchising Inc.,* 211 F.3d 495, 498 (citing *Stewart,* 487 U.S. 22 (1988)). Because there is a presumption in favor of the plaintiff's choice of forum, the Defendants must make a strong showing of inconvenience to warrant transferring venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit has identified the following factors district courts may consider in determining whether a transfer is appropriate:

(1) the location where the relevant agreements were negotiated and executed,

(2) the state that is most familiar with the governing law,

**MEMORANDUM ORDER - Page 15**

(3) the plaintiff's choice of forum,

(4) the respective parties' contacts with the forum,

(5) the contacts relating to the plaintiff's cause of action in the chosen forum,

(6) the differences in the costs of litigation in the two forums,

(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and

(8) the ease of access to sources of proof.

*Jones,* 211 F.3d at 498–99. "Additionally, the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis." *Id.* (citing *Stewart,* 487 U.S. at 29). The Ninth Circuit has also stated, however, that the "relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.*

Defendants argue that, in the alternative, venue should be transferred to Utah because 1) the relevant conduct (the Utah Meeting) occurred in Utah; 2) the parties agreed that Utah law would apply to all non-corporate matters; 3) as a whole, the parties have more significant contacts with Utah than with Idaho; and 4) litigation costs, ease of discovery, and access to proof factors weigh in favor of litigating in Utah.

In considering the first factor, this Court finds that although the face to face meeting to discuss the potential investment agreement was held in Utah, the agreement was not finalized until Plaintiffs were back in Idaho and the parties had exchanged various emails, telephone calls, faxes, and wire transfers. For example, the parties negotiated two subscription agreements, a Shareholders' Agreement and amendment, and two promissory notes. These documents were negotiated by way of drafts being sent to

**MEMORANDUM ORDER - Page 16**

Mr. VanderSloot in Idaho, which he then reviewed and returned to the Defendants in Utah with his comments. (Dkt. 12 at 5-6.) On whole, the negotiation and execution of the parties' agreements occurred in both Utah and Idaho. Thus, under this factor, the Court finds the Defendants cannot make a strong showing that venue should be transferred.

As to the second factor, the parties disagree as to which states' law applies. The Stockholders' Agreement states that Utah law will apply to all non-corporate matters. (Dkt. 9-1 at 7.) Plaintiffs argue that their claims arise from Defendants' tortious, fraudulent, and other wrongful conduct, and that Idaho and/or Delaware law should apply. (Dkt. 12 at 15.) The Defendants argue that the choice of law provision in the Stockholders' Agreement controls this litigation. Both Parties acknowledge that this Court is competent to apply Utah, Idaho, or Delaware law if it is required to so. (Dkt. 9-1) (Dkt. 12 at 16.) The Court finds that this factor weighs neither in favor nor against transferring venue.

For the third factor, Plaintiffs' choice of forum here is Idaho. "Generally there is a strong presumption in favor of honoring a plaintiff's choice of forum." *Doolittle v. Structured Investments Co., LLC*, CV07-356-S-EJL-CWD, 2008 WL 5121591 (D. Idaho Dec. 4, 2008) (citing *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 703 (9th Cir. 1995)). This factor weighs heavily in favor of keeping this litigation in Idaho. Plaintiffs are Idaho residents who want this litigation handled in in their home state. Also, the Defendants only listed one potential out-of-state witness, while the Plaintiffs listed four potential Idaho witnesses. Furthermore, the Plaintiffs assert that all of Technology's relevant business records are in Idaho.

**MEMORANDUM ORDER - Page 17**

Fourth, as discussed previously, the Defendants had significant contacts with the Plaintiffs in Idaho. As alleged in the Complaint, the Defendants initiated the first telephone call with Mr. VanderSloot and continuously corresponded with him and his representatives in Idaho; concerning drafts of certain documents and requesting funds. The Court finds the Defendants had significant contacts with Plaintiffs in Idaho and those contacts give rise to Plaintiffs' causes of action.

Finally, despite the fact that Defendant BMW Properties have a separate suit pending against the Plaintiffs in Utah state court, the Defendants have not met their burden to show that the costs of litigation, the ease of discovery, and the ease of access to sources of proof weigh in favor of transferring venue. Neither party has shown there is any palpable difference in the costs associated with litigation in Utah versus Idaho. The Defendants stated that they will require discovery and attendance at trial from non-party witnesses, living in Utah, who have knowledge of the facts in this case. (Dkt. 9-1 at 13-14.) However, as discussed previously, their pleadings did not list any other potential Utah witnesses other than Marsha Park; the Plaintiffs listed at least four non-party witnesses who all live in Idaho. The Court finds any difference in the litigation costs between these two bordering states is minimal.

The Court also finds the Defendants' vague and general statements about the convenience to, and availability of, their Utah witnesses are not enough to require transfer of venue. *See IDACORP, Inc. v. Am. Fiber Sys., Inc*., 1:11-CV-00654-EJL, 2012 WL 4139925 (D. Idaho Sept. 19, 2012) ("The Court requires a more specific showing before

transferring this case to another district based on the convenience and availability of witnesses."); *Cf. Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989) (to support its contention that witnesses were beyond the trial court's reach, moving party "obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included"). Based on the foregoing, the Court finds that the Defendants have failed to satisfy their burden to show an inconvenience to the parties sufficient to warrant a transfer of venue under § 1404.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Motion to Dismiss or in the Alternative to Transfer (Dkt. 9) is **DENIED**.

DATED: **May 1, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - Page 19**